UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BALUMA, S.A., d/b/a ENJOY PUNTA DEL ESTE & CASINO,<br><br>　　　　Plaintiff\Counterdefendant,<br><br>　　v.<br><br>JOHNNY CHUN-YU CHOW,<br><br>　　　　Defendant\Counterclaimant. | Case No. 2:20-cv-001752-KJD-EJY<br><br>ORDER |

　　　Presently before the Court is Plaintiff's Motion for Summary Judgment (#17). Defendant filed a response in opposition (#21) to which Plaintiff replied (#22).

I. Facts

　　　Plaintiff Baluma, a gaming corporation in Uruguay associated with Caesars Entertainment, brings this action to recover for breach of contract based on gaming markers signed by Defendant. On or about November 15, 2018, Defendant Johnny Chun-yu Chow submitted a credit application (the "Credit Application") to Plaintiff Baluma seeking to obtain credit from Baluma. In connection with the Credit Application, Chow completed a separate document entitled "Casino Credit Fact Sheet, Application and Agreement" (the "Fact Sheet") which set forth certain terms and conditions associated with the line of credit sought by Chow. As a result, Chow was granted marker signing privileges.

　　　Chow then executed four Draw Requests, seeking to draw down the full amount of his line of credit, $550,000.00. In connection with his request, Chow admits that he executed four (4) substantially similar agreements known as the Draw Requests. The Draw Requests contained Defendant's promise to repay the stated amounts (up to $300,000.00 per request) acknowledging that the document was a credit instrument that created an obligation to pay the full amount,

"identical to a personal check[.]" See Plaintiff's Motion for Summary Judgment ("MSJ"), Doc. No. 17, p. 4, l. 1-15.

After agreeing to the terms of the Draw Requests, Chow signed twenty (20) separate markers reflecting the total principal amount of indebtedness of $550,000.00 (the "Markers"). Baluma has demonstrated, and Chow has admitted (through his unwithdrawn Admissions and his deposition testimony), that the Markers expressly contemplated that Chow would pay the amount reflected therein, plus interest, on or before the dates set forth in each Marker. Baluma has established, and Chow has admitted, that he accepted $550,000 from the Casino and utilized the same gambling in the Casino.

Despite Chow's express obligation to repay the entire amount due under the Markers, Chow has admitted that he did not repay the amounts reflected by the Markers prior to leaving the Casino or by the dates contemplated by the Markers. See MSJ, Ex. 4, Chow Dep. Tr., 220:5-15. Such amounts remain due and owing to Baluma.

Plaintiff then filed the present action asserting claims for breach of contract, breach of the covenant of good faith and fair dealing and unjust enrichment.[1] Defendant filed a counterclaim asserting claims for setoff, recoupment and breach of contract.

II. Standard

Summary judgment is appropriate when the pleadings, discovery responses, and affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). For summary judgment purposes, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Kaiser Cement Corp. v. Fishbach & Moore, Inc., 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the initial burden of showing that there are no genuine issues of material fact for trial. It can do this by: (1) presenting evidence to negate an essential element of

---

[1] The Court, finding that no genuine issue of material fact prevents it from granting Plaintiff's motion for summary judgment on breach of contract, dismisses Plaintiff's claim for unjust enrichment as moot. The general rule being that unjust enrichment claims may not be based on express written contracts. Leasepartners Corp v. Robert L. Brooks Trust, 942 P.2d 182, 187 (Nev. 1997).

1  the nonmoving party's case; or (2) demonstrating the nonmoving party failed to make a showing
2  sufficient to establish an element essential to that party's case on which that party will bear the
3  burden of proof at trial. See Celotex, 477 U.S. at 323–325.
4        If the moving party satisfies its initial burden, the burden shifts to the opposing party to
5  establish that a genuine dispute exists as to a material fact. See Matsushita Elec. Indus. Co. v.
6  Zenith Radio Corp., 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of
7  material fact, it is sufficient that "the claimed factual dispute be shown to require a jury or judge
8  to resolve the parties' differing versions of the truth at trial." T. W. Elec. Serv., Inc. v. Pac. Elec.
9  Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). But
10  the nonmoving party "must do more than simply show that there is some metaphysical doubt as
11  to the material facts." Bank of Am. v. Orr, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations
12  omitted). It "must produce specific evidence, through affidavits or admissible discovery material,
13  to show" a sufficient evidentiary basis on which a reasonable fact finder could find in its favor.
14  Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991); Anderson v. Liberty Lobby,
15  Inc., 477 U.S. 242, 248–249 (1986).
16  III. Plaintiff's Motion for Summary Judgment on Its Claims
17      A. Breach of Contract
18        To prevail on its breach of contract claim against Chow, Baluma must prove: "(1)
19  formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3)
20  material breach by the defendant; and (4) damages." See Laguerre v. Nevada Sys. of Higher
21  Educ., 837 F. Supp. 2d 1176, 1180 (D. Nev. 2011). After establishing the required elements,
22  summary judgment is appropriate in a marker collection case such as this. See NRS 463.368(1)
23  et seq.; see also Morales v. Aria Resort & Casino, LLC, 995 F. Supp. 2d 1176, 1180-1181 (D.
24  Nev. 2014) (finding credit applications and markers are contracts, under which the signing party
25  has a duty to pay); see also Desert Palace, Inc. v. Michael, No. 2:16-cv-0462-JAD-GWF, 2017
26  U.S. Dist. LEXIS 19202, at *8 (D. Nev. Feb. 9, 2017) (finding the casino could bring a civil
27  action against the patron to recover the amount of the debt without presenting the markers to the
28  designated banks for payment).

Here, there is no genuine issue that must be resolved by a fact finder. It is undisputed that Chow entered into a series of valid and existing contracts for loans totaling the amount of $550,000.00 — namely, the Credit Application, the Fact Sheet, Draw Request, and Markers (collectively, the "Contract").

There is no dispute as to repayment obligations under the Contract as reflected by its plain language. May v. Anderson, 672 P.3d 1254, 1257 (Nev. 2005) (under Nevada law, "Basic principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration"). Chow confirmed that he executed each of those documents with the intent of receiving a $550,000 line of credit with which to gamble at Baluma's casino, confirming that there was an acceptance and meeting of the minds with respect to parties' Contract. Ex. 2, Resp. to Admissions, Req. Nos. 1-3, 5-38; see also Chow Dep. Tr., 191: 5-13, 216:22-217:3, 218:15-20; 218:12-220:15. Indeed, Chow has admitted that he understood the Casino expected to be repaid all funds advanced to him under the markers:

> Q. And you would agree with me, wouldn't you, that the casino was reasonable to expect that they would be repaid for the amounts that were gambled and lost; right?
>
> A. Right.

Ex. 4, Chow Dep. Tr., 102:10-18; see also id., 218:24-219:4.

> Q. ...you understood that the casino was anticipating that it was going to be made whole for those chips that it was providing to you; right?
>
> A. Yes.

Id., 219:15-22. In light of these established facts, there exists a valid and enforceable contract between Plaintiff and Chow under which Chow is obligated to repay the amounts owed thereunder.

Under the terms of the Contract, Baluma was obligated to provide Chow with $550,000 for his use within the Casino in exchange for Chow's promise to repay the funds loaned to him. Indeed, during his deposition, Chow testified that he signed for and was provided chips, representing the entire amount of his line of credit, for his use within the Casino:

- 4 -

1    Q. We talked about you personally took out a line of credit and

2    it was originally $100,000, right?

3    A. Yes.

4    Q. That was increased over time; right?

5    A. Yes.

6    Q. What was your ultimate line of credit with Baluma?

7    A. The finale?

8    Q. Yes.

9    A. I believe 500 or 550.

10    Q. And you drew down that entire line of credit; right?

11    A. Yes.

Ex. 4, Chow Dep. Tr., 132:24-133:12.

13    Q. You agree with me that you took out markers, right?

14    A. Yes sir.

15    Q. You agree that you received chips from those markers; right?

16    A. Uh-huh.

17    Q. You agree with me that you gambled those chips that you

18    received; right?

19    A. Right.

Id., 218:15-23.

It is also undisputed that Chow breached the Contract. That is, under the terms of the Credit Application, Fact Sheet, Draw Request and Markers, Chow was contractually obligated to repay the amounts loaned thereunder no later than the date set forth in each Marker. Chow executed the following Markers:

(1) Marker number MK293064+1 in the amount of $18,500.00 to be paid in full, plus interest, on or before November 16, 2019;

(2) Marker number MK293317+1 in the amount of $66,800.00 to be paid in full, plus interest, on or before November 18, 2019;

1   (3) Marker number MK293786 in the amount of $33,000.00 to be paid in full,
2   plus interest, on or before November 29, 2019;
3   (4) Marker number MK293959 in the amount of $45,000.00 to be paid in full,
4   plus interest, on or before December 2, 2019;
5   (5) Marker number MK294171 in the amount of $4,000.00 to be paid in full, plus
6   interest, on or before December 10, 2019;
7   (6) Marker number MK294202 in the amount of $50,000.00 to be paid in full,
8   plus interest, on or before December 12, 2019;
9   (7) Marker number MK294392 in the amount of $6,000.00 to be paid in full, plus
10  interest, on or before December 14, 2019;
11  (8) Marker number MK294462 in the amount of $5,000.00 to be paid in full, plus
12  interest, on or before December 14, 2019;
13  (9) Marker number MK294509 in the amount of $50,000.00 to be paid in full,
14  plus interest, on or before December 15, 2019;
15  (10) Marker number MK294511 in the amount of $50,000.00 to be paid in full,
16  plus interest, on or before December 15, 2019;
17  (11) Marker number MK294704 in the amount of $2,000.00 to be paid in full,
18  plus interest, on or before December 16, 2019;
19  (12) Marker number MK294763 in the amount of $50,000.00 to be paid in full,
20  plus interest, on or before December 17, 2019;
21  (13) Marker number MK294781 in the amount of $2,000.00 to be paid in full,
22  plus interest, on or before December 18, 2019;
23  (14) Marker number MK296005 in the amount of $2,800.00 to be paid in full,
24  plus interest, on or before January 5, 2020;
25  (15) Marker number MK295979 in the amount of $2,800.00 to be paid in full,
26  plus interest, on or before January 5, 2020;
27  (16) Marker number MK296131 in the amount of $50,000.00 to be paid in full,
28  plus interest, on or before January 6, 2020;

    (17) Marker number MK296133 in the amount of $45,100.00 to be paid in full, plus interest, on or before January 6, 2020;

    (18) Marker number MK293560+1 in the amount of $10,000.00 to be paid in full, plus interest, on or before January 11, 2020;

    (19) Marker number MK298856 in the amount of $7,000.00 to be paid in full, plus interest, on or before March 6, 2020;

    (20) Marker number MK10309393 in the amount of $50,000.00 to be paid in full, plus interest, on or before May 10, 2020.

See Ex. 2, Resp. to Admissions, Req. Nos. 19-38 (admitting to signing each Marker) Ex. 4, Chow Dep. Tr., 191:5-13, 216:22-217:3, 218:15-20; Ex. 6, Bayeto Decl., ¶¶ 7-10; Chow's Answer, Affirmative Defenses, & Counterclaim ("Ans.") (ECF No. 14) at ¶¶ 14-34 (admitting to signing each Marker).

  It is also undisputed that Chow did not repay the $550,000 he received from Baluma, i.e., that he breached the terms of the Contract. Ex. 4, Chow Dep. Tr., 218:5-15 (admitting that Chow never paid off Markers with check or cash); Ex. 7, Bayeto Decl., ¶¶ 13-14. By failing and/or refusing to repay the amount due under the Markers by the dates contemplated therein, Chow has breached a material term of the Contract at issue. See Laguerre, 837 F. Supp. 2d at 1180.

  Finally, there is no dispute that Plaintiff performed under the terms of the Contract by providing Chow $550,000 to gamble in the Casino under his line of credit. After Plaintiff's performance, the terms of the Contract dictate that Chow is contractually obligated to repay the principal amount reflected in the Markers plus interest. Chow has admittedly not repaid any of the money loaned to him under the Markers. Therefore, Baluma has been directly damaged in the amount of $550,000.00 plus interest and attorneys' fees.

  Given that Plaintiff has set forth uncontroverted evidence to establish that: (a) there exists a valid and existing contract between Baluma and Chow; (b) Baluma performed all material terms of the agreement; (c) Chow breached the agreement by failing and/or refusing to repay the amounts owed; and (d) Baluma has been directly damaged as a result of Chow's breach, the Court grants summary judgment in Plaintiff's favor on its first claim for breach of contract.

B. Breach of the Covenant of Good Faith and Fair Dealing

To establish a claim for breach of the implied covenant of good faith and fair dealing, a party must show: (1) plaintiff and defendant were parties to a contract; (2) defendant owed a duty of good faith to plaintiff; (3) defendant breached that duty by performing in a manner that was unfair or unfaithful to the purpose of the contract; and (4) plaintiff's justified expectations were denied. Hilton Hotels Corp. v. Butch Lewis Prods., Inc., 808 P.2d 919, 922 (Nev. 1991). Where a party to a contract acts deliberately to contravene the intention and spirit of the contract, that party may be found liable for breach of the implied covenant of good faith and fair dealing. Id. at 923.

Here, Chow entered into a Contract with Baluma executing the Markers knowing that the intent of the documents constituting the Contract was the provision of money to Chow for him to gamble, which amounts were to be repaid to the Casino. Despite his knowledge that all amounts provided to him under the Markers were to be repaid, Chow left the Casino without repaying the same and further allowed the deadline for repayment set forth therein to lapse without even attempting to make a payment—a fact admitted by Chow.

Thus, as admitted through his own testimony, pleadings, and discovery responses, Chow acted in a manner intended to contravene the spirit of the agreement between the parties—namely that he accepted funds under the Markers and failed to repay the same in accordance with the terms of the Markers.[2] Therefore, the Court grants summary in Plaintiff's favor on its second cause of action for breach of the covenant of good faith and fair dealing.[3]

IV. Plaintiff's Motion for Summary Judgment on Defendant's Affirmative Defenses and Counterclaims

Chow's Counterclaim is based on an Independent Agent Agreement which he entered

---

[2] To the extent that Defendant argues that his testimony and affidavit raise genuine issues of material fact, the Court disagrees. "[A] party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991). Likewise, "[a] party cannot create a genuine issue of material fact to survive summary judgment by contradicting his earlier version of the facts." Block v. City of Los Angeles, 253 F.3d 410, 419 n. 2 (9th Cir. 2001) (rejecting a declaration that contradicted stipulated facts). Here, Defendant's formal Admissions have never been withdrawn.

[3] The Court notes that Plaintiff has not suffered any damage additional to that accrued in its breach of contract claim.

into with Baluma on or around November 1, 2018. Relying on the Independent Agent Agreement, Chow argues that he "has a valid, enforceable debt against Plaintiff, in the form of unpaid commissions Plaintiff agreed to pay, but failed to do so, and expenses Plaintiff agreed to cover, including those for airfare, lodging, food and beverages." Doc. No. 14, Answer at 8:6-11.

Basically, Chow argues that he is not liable for the debt at issue in the Complaint because he was allegedly owed commissions from the Casino under the Independent Agent Agreement which he believes offset the amount owed under the Contract. See Ans. at 7:17-9:16. However, Chow's arguments are directly contradicted by the unambiguous terms of the Independent Agent Agreement. Indeed, under the terms of the Independent Agent Agreement, Chow is not entitled to setoff or recoupment. What is more, Baluma has complied with all terms of the Independent Agent Agreement and Chow's claim for breach of contract fails.

A. Affirmative Defenses of Setoff and Recoupment

Setoff and recoupment are equitable defenses under which a defendant may seek to offset sums owing to the plaintiff against sums owing from the plaintiff to the defendant. See Newbery Corp. v. Fireman's Fund Ins. Co., 95 F.3d 1392, 1398 (9th Cir. 2006) (citing Citizens Bank of Maryland v. Strumpf, 516 U.S. 16, 18 (1995). "The right of setoff is permissive, not mandatory; its application 'rests in the discretion of [the] court, which exercises such discretion under the general principles of [equity].' [] 'The burden of proving an enforceable right of setoff rests with the party asserting the right.'" Id. at 1399. The doctrine of setoff is intended to avoid "the absurdity of making A pay B when B owes A." Citizens Bank of Maryland, 516 U.S. at 18. Recoupment, on the other hand, "is the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim." Newbery Corp., 95 F.3d at 1399.

In this case, Chow's claims for setoff and recoupment appear to arise from a purported "agreement" between the parties that was never reduced to writing. Indeed, during his deposition, Chow outlined this purported "agreement" but admitted the "agreement" was never reduced to writing:

Q. The process generally worked substantially similar to what

1         you had done in other casinos?

2         A. I had a different arrangement with Baluma.

3         Q. What was your arrangement with Baluma?

4         A. That I would just need the commissions and I would - - I

5         would leave the commissions and whatever - - whatever our

6         certain was that whatever, we would just clear it out.

7         Q. Was that arrangement in writing anywhere?

8         A. Not that I recall.

Ex. 4, Chow Dep. Tr., 134:14-24.

Critically, the Independent Agent Agreement expressly forbids modification by prior dealings or course of action as Chow now alleges. Specifically, Section 32 of the Independent Agent Agreement provides "No course of dealing, usage, custom of trade or communication between the parties hereto shall modify or alter any of the rights or obligations of the parties hereunder." Ex. 8, Independent Agent Agreement, p. 9.

Thus, under the terms of the Independent Agent Agreement, which Chow negotiated and agreed to, payment of commissions would only be made to the bank account provided by Chow - and could not be applied to offset any amount of debt owed by Chow or any other individual. Ex. 8, Independent Agent Agreement, at p. 5. To the extent the parties may have deviated in the payment of certain commissions at times is of no consequence as the parties had agreed that any such conduct would not alter the plain, unambiguous language of the agreement. Id. at p. 9.

Discovery in this case is closed and Chow has failed to provide any evidence that the parties' written Independent Agent Agreement was modified in accordance with its terms that could support his theory of offset or recoupment. Nor has Chow presented evidence establishing any entitlement to any such offset or recoupment; instead he has made conclusory statements that he is entitled to some unidentified amount from the Casino based on an unsubstantiated purported oral agreement between the parties. Thus, Chow cannot establish that he is owed any amount that may properly be offset against his own debt. See Newbery Corp., 95 F.3d at 1398-1399. Chow's arguments are simply not enough to disavow the plain language of the parties'

agreement or to prevent entry of summary judgment against him as to his default under the Markers and related agreements. Therefore, the Court grants Plaintiff's motion for summary judgment on Defendant's affirmative defenses of setoff and recoupment.[4]

### B. Contract Counterclaims

As with his claims for setoff and recoupment, Chow bases his claim for breach of contract on his belief that the Casino was contractually obligated to apply some undetermined commission payment to the debt at issue in the Complaint. Specifically, Chow asserts "Plaintiff/Counter-Defendant breached the Independent Agent Agreement by, among other reasons, failing to have satisfied Defendant's credit instruments before Defendant left the casino, as Plaintiff had done on each of Defendant's previous visits; failing to apply to Defendant's credit line the expenses Defendant incurred in visiting and staying at the casino, including airfare, lodging, food, and beverage, just as Plaintiff had done on each of Defendant's visit; and failing to pay the commissions Plaintiff owed Defendant."

To establish a claim for breach of contract, Chow must establish "(1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages." See Laguerre, 837 F. Supp. 2d at 1180. In other words, Chow must establish that Baluma had some contractual duty to "satisfy" his credit instruments and to "apply to Defendant's credit line the expenses Defendant incurred[.]" However, the Independent Agent Agreement contains no such provision.

With respect to Chow's claim that Baluma failed to "satisfy" his debt, Chow cannot establish that Baluma was under contractual duty as he alleges. In fact, the Independent Agent Agreement, in Paragraph 13, clearly sets forth the procedure through which Chow was to be paid

---

[4] To the extent that Chow claims that issues of fact exist by referencing attached spreadsheets, he has done so with providing no detail to the Court at all. The documents, written in Spanish, are not self explanatory. Merely referencing without explaining in detail in an admissible format why Chow is owed money or commissions does not meet non-movants' duty to provide facts demonstrating the necessity for a trial. Instead, Defendant has left it to the Court to sift through the "data". However, "[a]s the Seventh Circuit observed in its now familiar maxim, '[j]udges are not like pigs, hunting for truffles buried in briefs.'" Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003)(citing United States v. Dunkel, 927 F.2d 955, 956 (7th Cir.1991)). Accordingly, the Court finds these documents insufficient to raise genuine issues of material fact that support neither the affirmative defenses nor the counterclaims.

1  commission.[5] Under the commission structure set forth in the Independent Agent Agreement, all
2  commissions are to be paid to Chow's bank account on file and are not to be applied to any
3  outstanding debt held by himself or any other individual. More deadly to Chow's claims, the
4  Independent Agent Agreement expressly precludes the application of potential commissions
5  sought by Chow by condemning any modification of the agreement by course of dealing, usage,
6  custom of trade, or communication between the parties. Ex. 8, Independent Agent Agreement, p.
7  9. Thus, Chow's reliance on some unsubstantiated previous acts is misplaced in this context. In
8  other words, any prior action taken by the parties with respect to Chow's commissions has no
9  bearing on Chow's obligations—and Baluma's rights—under the Markers and related
10 agreements or under the Independent Agent Agreement.

      Moreover, Chow has not presented any evidence demonstrating that any particular commissions actually remain unpaid. As reflected in the Independent Agent Agreement and as understood by Chow, "[n]o commission payments will be processed until all credit instruments have been paid in full by the applicable customer." Id., p. 13, § 7(3). Similarly, the parties acknowledged that "[i]f credit instruments are turned over to a legal collections process, no commission will be paid." Id., p. 13, § 7(4) (emphasis added); see also id., p. 5, § 13(b) ("No compensation will be paid until all credit instruments have been paid in full by the applicable customer. If any credit balances are turned over to collections or a settlement becomes necessary, any commissions related thereto shall be forfeited[.]"), id., p. 13 § 7(5) ("Under no circumstances will any commission be paid on players with markers that have not been cleared within 365 days after the customer visit."). In short, if any player Chow brought to the Casino failed to repay his or her markers, then Chow was entitled to nothing. Id. Chow understood that his commissions would be paid when the customer who owed money to the Casino paid:

      Q. Yeah, but if those markers don't get paid, you don't get paid;
      right?
      [Counsel objects to form.]

---

[5] During his deposition, Chow admitted to having reviewed and negotiated the Independent Agent Agreement and to initialing certain pages of the Independent Agent Agreement. See Ex. 4, Chow Dep. Tr., 252:3-23 (admitting to initialing the Independent Agent Agreement).

A. Correct.

Ex. 4, Chow Dep. Tr., 154:20-23; see also id., 158:3-9. Many of Chow's players defaulted on their lines of credit, requiring Baluma to take legal action against them and, thus, wiping away any potential commissions Chow now wants to claim.

Further, with respect to Chow's claimed entitlement to certain expenses, Chow has produced no evidence that he complied with the requirements set forth in the Independent Agent Agreement, Paragraph 15, and was not reimbursed for any such commissions.

Given the complete absence of any evidence to support Chow's contract-based counterclaims, the Court grants summary judgment in Baluma's favor on the contract counterclaims. Chow has not identified any expense which he claims were to be repaid nor has he produced a single piece of evidence that he was not reimbursed for any properly approved expenses. As such, Chow once again cannot establish a material breach of any term of the Independent Agent Agreement by Baluma. In the absence of such fundamental evidence needed to sustain a claim of breach of contract, Chow cannot meet his burden of establishing all essential elements. Given that Chow has failed to produce any evidence demonstrating (a) that Baluma was contractually obligated to apply any amount of commissions to his debt or the debt of another; and (b) that Baluma failed to reimburse Chow for any properly approved expenses, Chow has not demonstrated any genuine issues of fact for trial and the Court grants summary judgment for Baluma and against Chow on his breach of contract claim. See Laguerre, 837 F. Supp. 2d at 1180.

V. Damages

"[C]ontract damages are prospective in nature and are intended to place the nonbreaching party in as good a position as if the contract had been performed." Colorado Env'ts, Inc. v. Valley Grading Corp., 779 P.2d 80, 84 (Nev. 1989). Based on this record, the Court finds that Baluma has met its obligation on summary judgment and that Chow has not presented evidence to create a triable issue. Therefore, the Court grants Baluma's motion on its breach-of-contract claim and awards damages in the amount of $550,000.00.

VI. Conclusion

Accordingly, IT IS HEREBY ORDERED that Plaintiff/Counterdefendant's Motion for Summary Judgment (#17) is **GRANTED**;

IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** in the amount of $550,000.00 in favor of Plaintiff and against Defendant.

Dated this 24th day of March, 2022.

_____
Kent J. Dawson
United States District Judge